## Case No. 3,911.

### DILL v. ELLICOTT et al.

[Taney, 233.][1]

Circuit Court, D. Maryland. Nov. Term, 1854.

USURY—CONSTITUTIONAL PROVISION—CONTRACT VOID—PENALTIES AND FORFEITURES.

1. The constitution of Maryland (article 3, § 49), declares, "that the rate of interest in this state, shall not exceed six per cent. per annum, and no higher rate shall be taken or demanded; and the legislature shall provide by law all necessary forfeitures and penalties against usury:" Held, that under this provision, a contract by which a higher rate of interest than six per cent. is taken or demanded, is void, not only for the excess, but for the whole amount; and cannot be enforced in a court of justice.

2. A contract to do an act forbidden by law, is void, and cannot be enforced in a court of justice.

3. There can be no civil right where there is no legal remedy, and there can be no legal remedy for that which is itself illegal.

[Cited in Tiffany v. Boatman's Sav. Inst., 18 Wall. (85 U. S.) 385.]

4. It is true, no penalty or forfeiture is incurred by reason of the usurious contract, until the legislature shall prescribe it; but the incapacity to maintain an action upon such contract is no forfeiture or penalty, for no right of action is acquired under it, and therefore, there is nothing to forfeit.

[This was an action at law by Adolph Dill against Jonathan H. Ellicott and Benjamin H. Ellicott.]

J. Mason Campbell and St. George W. Teackle, for plaintiff.
G. L. Dulaney, for defendants.

TANEY, Circuit Justice. This action is brought by the endorsee of a bill of exchange, drawn upon the defendants, and accepted by them, for $1000. The defendants plead, that the bill was given to secure the payment of money loaned, by the plaintiff, o the payee of the bill, upon which an interest exceeding six per cent. was reserved; and that such contract was usurious, and the plaintiff not entitled to maintain in action upon it. To this plea the plaintiff has demurred; and the question submitted to the court on these pleadings is, whether, under the constitution of Maryland, adopted in 1851, an action can be maintained upon a contract for the loan of money, where an interest of more than six per cent. is reserved or received. The clause of the constitution is in the following words: "That the rate of interest in this state shall not exceed six per cent. per annum, and no higher rate shall be taken or demanded; and the legislature shall provide by law all necessary for-

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

feitures and penalties against usury." This provision is contained in article 3, § 49, under the head of "Legislative Department." And by the third article of the declaration of rights, all acts of assembly in force on the first Monday in November 1850, which had not expired at the adoption of the constitution, and were not altered by it, were continued in force, subject, nevertheless, to the revision of, and amendment and repeal by, the legislature of the state.

The acts of assembly, material to this question, which were passed previously to the adoption of the constitution, were those of 1704 and 1845. The first section of the act of 1704, declared that no person should exact or take above the rate of six per cent. per annum, upon the loan of any moneys, goods, or merchandise or other commodities, to be paid in money; the second section declares, that all contracts, by which a higher rate of interest was received, should be void; and the third section inflicted penalties for taking or receiving more than the rate of interest limited by that act. The provisions of this law were materially changed by the act of 1845; by that act the lender was entitled to recover the amount actually loaned with six per cent. interest upon it, although the contract was usurious, and stipulated for a higher interest, and it repealed altogether the third section of the act of 1704.

The act of 1845 was still in force when the constitution was adopted, and the point in issue between the parties, upon the demurrer, is, whether the provisions of this act are inconsistent with the clause of the constitution before recited, and therefore repealed by it. In determining this question, the wisdom or policy of usury laws, is not a subject for the consideration of the court; that was a question for the people of Maryland when they adopted the constitution. It is the duty of the court to carry into effect the provisions of that instrument, according to its true intent, to be gathered from its own words; and referring to the previous legislation of the state only so far as it may contribute to illustrate the meaning of doubtful or ambiguous language, if any such be found in the constitution; and to ascertain what previous acts of assembly are still in force.

It would be difficult, we think, to raise a doubt as to the meaning of the prohibitory part of the section of which we are speaking. It declares "that the rate of interest shall not exceed six per cent. per annum, and no higher rate shall be taken or demanded." These words are free from all ambiguity; they prohibit in plain, positive and direct terms the taking or demanding of more than six per cent. interest; and on this point it refers nothing to future legislation. The constitution itself makes the prohibition, and all future legislation must be subordinate and conformable to this provision. Whoever takes or demands more than six per cent. while this constitution is in force, does an unlawful act; an act forbidden by the constitution of the state. Nor do the words which follow qualify or restrain, in any degree, the meaning of the words above quoted; they declare that "the legislature shall provide by law all necessary forfeitures and penalties against usury." Now, usury consists in taking an interest for money above that allowed by law; the taking of more than six per cent. is therefore usury; and the words last quoted treat it as an offence, and direct the legislature to punish it with penalties and forfeitures. The words do not merely give the power to punish, they are mandatory, and make it the duty of the legislature to punish disobedience to that provision, by forfeitures and penalties. Certainly, if the taking or demanding of more than six per cent. was not intended to be absolutely prohibited by the preceding part of the section, there would be no propriety in commanding it to be punished.

The words last quoted, therefore, do not qualify or restrict the meaning of the preceding words; on the contrary, they show that the framers of the constitution, after fixing the amount of interest which a party might lawfully take or demand, proceeded to make that provision more effectual, by requiring the legislature to enforce it, and to inflict forfeitures and penalties upon any one who should thereafter take or demand an amount of interest exceeding that prescribed by the constitution.

This being the evident meaning of the language of this section, can a contract, by which a higher interest is taken or demanded, be enforced in a court of justice? It is true, the constitution does not say, in express terms, that such a contract shall be void, nor was such a provision necessary to invalidate it; for it is well settled, by a multitude of decisions, in this country and in England, that a contract to do an act forbidden by law is void, and cannot be enforced in a court of justice—we do not stop at present to refer to judicial decisions to support this proposition; many cases to that effect, are cited in the opinion delivered, by the supreme court of the United States, in Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 527; and we are not aware of any decisions, in any court, in which a contrary doctrine has been held. Indeed, in a state where the legislative, executive and judicial departments are separated, it would render all law uncertain and ineffectual, if the judicial power enforced, in whole or in part, the performance of a contract to do an act, which is altogether forbidden to be done by the constitution or laws of the state. And as the constitution has forbidden the taking or demanding of more than six per cent., no contract, made in this state, can be enforced, where a higher rate of interest is taken or demanded by the contract.

This view of the subject is fully supported by the decision of the supreme court, in the case of the Bank of U. S. v. Owens, herein-

before referred to. The charter of the bank contained a provision in the following words: "It (the bank) shall not be at liberty to purchase any public debt whatever, nor shall it take more than at the rate of six per cent. per annum for or upon its loans or discounts." And in an action brought by the bank upon a promissory note, the defendant pleaded that it was discounted upon an agreement to pay the bank a higher rate of interest than six per cent.; to this plea the bank demurred, thus bringing the question before the court in the same mode of pleading adopted by the counsel in this case; and Mr. Sergeant, who argued the case for the bank, contended (as the counsel for the plaintiff have done here), that a mere prohibition to take more than six per cent., did not avoid a contract to take more; and that when an agreement is avoided, it is always in consequence of an express provision by law to that effect. 2 Pet. [27 U. S.] 531. But the court held otherwise; and the language of the supreme court in deciding that question is so appropriate and directly applicable to the case before us, that we give it in the words of the court: "Some doubts have been thrown out whether, as the charter speaks only of 'taking,' it can apply to a case in which the interest has been only reserved, not received; but on that point, the majority of the court are clearly of opinion that 'reserving' must be implied in the word 'taking;' since it cannot be permitted, by law, to stipulate for the reservation of that which it is not permitted to receive. 1 Hawk. P. C. 620. In those instances in which courts are called upon to inflict a penalty upon the lender, whether in a civil or criminal form of action, it is necessarily otherwise; for then the actual receipt is generally necessary to consummate the offence; but when the restrictive policy of a law alone is in contemplation, we hold it to be a universal rule, that it is unlawful to contract to do that which it is unlawful to do."

After deciding this point and remarking briefly on the manner in which it came before the court, they proceed to say: "To understand the gist of the question it is necessary to observe that, although the act of incorporation forbids the taking of greater interest than six per cent., it does not declare void any contract reserving a greater sum than is permitted. Most, if not all, of the acts passed in England, and in the states, on the same subject, declare such contracts usurious and void. The question then is, whether such contracts are void in law, upon general principles. The answer would seem to be plain and obvious, that no court of justice can, in its nature, be made the hand-maid of iniquity; courts are instituted to carry into effect the laws of a country. How can they then become auxiliary to the consummation of a violation of law? To enumerate here all the instances and cases in which this reasoning has been practically applied, would be to incur the imputation of vain parade; there can be no civil right where there is no legal remedy; and there can be no legal remedy for that which is itself illegal."

We forbear to quote further from the language of the supreme court; and it is sufficient to say, that after having stated the principles of law in the manner set forth in the foregoing extract from the opinion, it proceeds to refer to many adjudged cases in support of the doctrine, showing that it applied to all cases where the act was prohibited by statute, although there was nothing morally wrong in the transaction; and upon this ground decided that the bank could not maintain an action on the note, as the demurrer admitted that it had been discounted upon an agreement to take more than six per cent. interest. We do not see how the case before us can be distinguished from the one decided by the supreme court; they present precisely the same question; and the established principles of law which decided the one in favor of the defendant, must decide the other in like manner.

It will be observed also, that the opinion we have quoted, points out clearly the distinction between a statute merely forbidding an act to be done, and one imposing a forfeiture or penalty for doing it; and is, in effect, an answer to that part of the argument on the part of the plaintiff which relied on the last words in the section of the constitution, requiring the legislature to impose forfeitures and penalties against usury. The absence of any provision inflicting a penalty (say the supreme court) does not give the party a right to maintain an action on the contract, if the law forbids the contract to be made; and the reason of the rule thus laid down is, that the contract being forbidden, the party can acquire no legal right under it, and consequently cannot maintain an action in a court of justice to enforce it. His incapacity to maintain an action upon it is no forfeiture or penalty, for he acquires no right under it, and therefore there is nothing to forfeit; the money he loans is not forfeited; for if he chooses to rely on the promise of the borrower, and the borrower repays him the money, he may lawfully keep it. It is not forfeited to the state, nor to any one else. But a court of justice cannot lend its aid to recover it, because the contract for the loan is one entire thing, and consequently is altogether invalid or void, and it would be contrary to the duty of a court of justice to assist a party in consummating an act which the law forbids. The absence of any penalty, therefore, is no argument in support of this action.

But in this case there is something more than the absence of penalties and forfeitures. It is made the duty of the legislature to inflict them; and the prohibitory

clause of the constitution must be construed now in the same manner, and have the same effect, as if the legislature had performed the duty enjoined upon it. It is true, no penalty or forfeiture is incurred, until the legislature shall prescribe it; but when that duty shall have been performed (be the penalty more or less), nobody, we presume, would contend that an action could still be maintained on the contract, upon payment of the penalty. The act of no future legislature can alter the meaning of the words used in the constitution; they remain the same, and must always be construed and administered in courts of justice, according to their legal import, as they stand in that instrument, whether future legislatures do or do not obey its mandates, and pass laws to enforce its provisions.

It follows from what we have said, that the first four sections of the act of 1845 are no longer in force. These sections made an usurious contract legal for the amount actually loaned, and authorized the lender to recover the amount, with six per cent. interest; it made it void only so far as the usurious interest was concerned; and, as a necessary consequence of this provision, it repealed expressly the third section of the act of 1704. The act of 1845 does not, therefore, prohibit an usurious contract, but sanctions and supports it, to the extent above mentioned. The constitution, on the contrary, by the prohibitory words used in it, makes the whole contract illegal, and, thereby, incapacitates the party from maintaining a suit upon it, for the money he actually loaned, or any part of it; and moreover, treats the taking or demanding more than six per cent. as an offence, and commands the legislature to provide forfeitures and penalties against it. The provisions of this act of assembly, and those contained in the constitution, are consequently inconsistent with each other, and the former is repealed.

In relation to the act of 1704, the plaintiff claims nothing under it; but inasmuch as the first section of that act, like the constitution, prohibits the taking of more than six per cent., and the second section contains an express provision, making void the contract where more is taken; the plaintiff contends that the omission of the second provision in the constitution, proves that it was not intended to make void the contract, but to leave it as provided for and legalized in the act of 1845.

But it is evident that the second section of the act of 1704, like similar provisions in the English statutes against usury, was introduced to remove any doubt which might be raised upon the words "exact or take," and to show that the prohibition was intended to apply to contracts in which usurious interest was reserved, to be paid at a future day, as well as to cases in which it was actually exacted and taken or received at the time of the loan. It was introduced for greater caution, and to prevent nice distinctions upon the words used. This is constantly done in acts of legislation. And the omission in the constitution of a provision of this description, contained in a previous act of assembly, would hardly justify the court in inferring that it was intended to authorize an action on a contract which the constitution itself prohibited.

In expounding an instrument so solemn and deliberate as a constitution, containing the fundamental law of the state, we are hardly at liberty to suppose that either those who framed it, or those who adopted it, intended to recognise or sanction the principle, that an action might be maintained upon a contract to do an act which the law forbade. On the contrary, a comparison between the language of the act of 1704 and the constitution tends strongly to support the construction we have given to the latter. The prohibition in the act of assembly is to "exact or take," and the second section, as we have said, was introduced for greater caution, in order to show more clearly that, while the penalties by that law were confined to the actual receiving, the prohibition extended further, and embraced contracts in which usurious interest was reserved, although payable at a future time. But the constitution does not use the prohibitory words of the first section, but provides that no higher rate shall be "taken or demanded." Now these words clearly embrace a contract by which usurious interest is to be paid at a future day, as well as contracts in which it is taken and received. It does not mean usurious interest demanded in the negotiation previous to the loan, but demanded by the contract itself, when actually made; and if so demanded, it is evidently included in the constitutional prohibition, even although the words "exacted and taken" should be regarded as confined to the actual receipt.

In an instrument like this, we are bound to presume that every word was deliberately weighed and considered before it was inserted; and with the act of 1704 before them, and about to establish, under a constitutional sanction, the principle contained in its first section, it ought not to be supposed, that its words were lightly and carelessly changed, or the word "demand" substituted in the place of the word "exact," without an object. A natural and proper object would be to condense in a few words the substantial provisions spread out in the first and second sections of the act of 1704; and we think they have used words sufficient to accomplish their purpose. A comparison between the words of this act of assembly and of the constitution of 1851, tends to confirm the construction we have placed upon the latter, and which its language naturally and legally imports. Upon the whole, the court is of opinion that the demurrer of the plaintiff to

the plea of usury cannot be maintained, and judgment must be entered accordingly.

After this opinion was given, the pleadings were amended, and the court being of opinion that the facts proved by the defendants did not show that usurious interest was taken or reserved, a verdict and judgment was entered for the full amount of principal and interest due on the bill of exchange.